STEVENS *v.* GAGE. { MARCH 13, 1875.

*Administration Account—Liability of Administrator for Funds Stolen.*

In settling an administration account, a court of probate will act upon equitable principles.

Therefore, where money belonging to an estate was stolen by burglars from the safe of the administrator, the court, upon being satisfied that the administrator had been guilty of no want of due care, *held* that he should be discharged as to the money so lost, on the settlement of his. account.

APPEAL from a decree of the judge of probate in the settlement of the account of the appellee, Isaac K. Gage, as administrator with the will annexed of Andrew Stevens. The appellant, Moses Stevens, is a son of the testator, and was named executor in the will, but declined the trust, and recommended the appointment of the defendant.

The case has been sent to an auditor, from whose report it appears that the only matter in controversy is a sum of $498.94 cash belonging to the estate, which was stolen by burglars on the night of April 18, 1869. The auditor reports that this money was placed in a large iron safe belonging to Gage, Porter & Co., of which firm the defendant was a member; that the safe was kept in a brick building, in which were the business office of the firm and a room for storing steel; that the burglars entered the building by removing a pane of glass from a window, and succeeded in breaking into the safe by drilling and blowing open the doors with powder; that, in addition to the money belonging to this estate, they found in the safe and carried away other funds, amounting to some $2,500 or $3,000 in all, belonging to various persons, among which was about $300 cash of Gage, Porter & Co., $250 bonds, and $20 or $30 coin of the defendant's private property.

*Sargent & Chase*, for the appellant.

*Butler*, for the appellee.

LADD, J. " It is said that there is a difference in the rule, as applied to executors in a court of law and a court of equity. Thus, in a court of law, an executor will be charged with all the assets that come to his hands to be administered, and he must discharge himself by showing a legal administration of all of them; and he cannot discharge himself at law by showing that he intrusted them to another in the ordinary course of business; that he used due caution and prudence, and reposed a reasonable confidence in such other person; and that the assets were lost without negligence or default on his part. Such a state of facts would not sustain a plea of *plene administravit* in a court of law; but a court of equity would adjust the account of an executor upon equitable principles. A court of probate in taking the account would also act upon equitable principles." Perry on Trusts, sec. 407, citing *Crosse* v. *Smith*, 7 East 246, *Jones* v. *Lewis*, 2 Ves. Sen. 241, *Poole* v. *Munday*, 103 Mass. 174, and *Upson* v. *Badeau*, 3 Bradf. Sur. 13.

In *Jones* v. *Lewis*, the defendant, an administrator, delivered goods for which she was liable to account, to a solicitor, who was robbed of them, and it was held that she was not to be charged for the goods so lost. Lord HARDWICKE said,—" It is certain that if a bailee of goods, against whom there is an action of account at law, loses the goods by robbery, that is a discharge in an action of account at law; and it is proved (and I think reasonably) that if a trustee is robbed, that robbery properly proved shall be a discharge, provided he keeps them so as he would his own. So it is as to an executor or administrator, who

is not to be charged further than goods come to his hands ; &ast; &ast; and if robbed, and he could not avoid it, he is not to be charged,—at least, in this court. How it would be in a court of law I know not, for I know no case of that at law. The defendant is administratrix : supposing these goods had been in her own custody and she had been robbed, I am clear of opinion, if that fact be made out, she ought to have been discharged of these goods. &ast; &ast; In the present case, what has been done is what she would have done with her own,—leaving them with her solicitor in order to be delivered to the plaintiff when proper to do so ;—and why might she not do that ? &ast; &ast; It would be too hard to charge her with these things lost. " See, also, *Bacon* v. *Bacon*, 5 Ves. 331.

It is not contended on behalf of the appellant but that the liability of this administrator for the money belonging to the estate, stolen from him under the circumstances shown by the auditor's report, depends upon whether or not he exercised due care in keeping it ; but the claim is that he did not exercise such care, and that the money was lost through his negligence. It appears that he took the same care of this money as he took of his own. Ordinarily I should not be inclined to regard that as a conclusive test of due care on the part of an administrator. But the significance of that fact is very considerably increased, as it seems to me, by the circumstance that the appellant recommended the appointment of Mr. Gage as administrator with the will annexed ; for where one voluntarily makes another his bailee, there is much reason in saying that he thereby signifies his confidence in the known personal character of such bailee, and his willingness to accept from him the same degree of care and prudence in keeping the thing intrusted to him as he uses in the care of his own goods of the same kind.

But without placing my decision on that ground alone, and without intending to relax the rule which should doubtless hold administrators to the exercise of all due and reasonable care with respect to funds which come to their hands in the course of administration, I am of opinion that Mr. Gage ought not to be held upon the facts stated in the auditor's report. The money was deposited in an iron safe designed and intended to keep its contents in security, as well against thieves and burglars as against fire ; and although such places for the deposit of valuables have been broken into and their contents stolen with startling frequency for the past few years, yet it must be admitted that the number thus invaded bears a very small proportion to the whole number in use during the same period of time. I am, upon the whole, inclined to hold that when Mr. Gage deposited this money in the safe, under all the circumstances shown by the report, he exercised with respect to it that degree of care which ought to be regarded as due care, and that he was, therefore, rightly discharged as to the amount stolen, on the settlement of his administration account in the probate court.

CUSHING, C. J.   I understand that the appellant rests his case on

the charge that the appellee did not exercise due care. I think that in this state the rule in regard to specific articles is as stated by my brother LADD.

As to the matter of due care, I find it difficult to imagine any course which would have been more reasonable.

As to the suggestion that the funds might have been specially deposited in a savings bank, or other bank, it does not appear to me that such a course would have been any better. If the safes of the banks are more modern and difficult to break, so they are more apt to be attacked, because the prize of success is so much greater. I believe that the proportion of private safes plundered, compared with the whole number, is much less than that of bank safes. I cannot, therefore, see in the facts reported any sufficient reason for charging the appellant with want of due care.

SMITH, J. I should be slow to assent to any decision in this case that would tend to relax the rule which should govern an administrator in the care and preservation of property, especially money that may come to his hands in that capacity. He is held to the exercise of due care. The question is, whether this appellee exercised due care in the custody of the funds of this estate. By the report of the auditor, it appears that he had, on the eighteenth of April, 1869, $498.94 belonging to this estate deposited in the safe of his firm in Fisherville; that the office of the firm was broken into in the night-time of that day, the safe blown open with powder, and this money, with other money and securities belonging to the appellee and his firm and others, was stolen therefrom : that the safe was a good one is shown by the fact that the burglars who entered it were obliged to resort to the use of gunpowder. It is reasonable to conclude that the lock was one that could not be easily picked. The appellee and his partners and other business men placed their own money and securities in it for safe keeping. The money might not have been lost if placed in a bank, but there was then no bank nearer than Concord, seven miles distant. The money might not have been lost if the appellee had carried it in his pocket, but no prudent man would think of carrying large sums of money in his pocket, to say nothing of the inconvenience of so doing. Where, then, could the appellee have kept this money with greater apparent safety ? His administration account shows that he was frequently receiving and paying out money on account of this estate, and held this money to be paid to creditors on call.

I am satisfied that in this case the administrator exercised due care, and therefore should be credited with the loss in his account. *Jones* v. *Lewis*, 2 Ves. Sen. 241, cited by my brother LADD, is a case which seems to be directly in point.

*Decree of the probate court affirmed.*